UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

THE GRAY INSURANCE
COMPANY, a foreign corporation,

        Plaintiff,                Case No.:

v.

GLOBAL IMPACT PRODUCTS,
LLC, a Florida limited liability
company, NATIONAL FACADE
SYSTEMS USA, LLC, a Florida
corporation, HARM VAN DER
MARK, individually, CINDY
SCHRAM, individually, and
CHRISTINE ORMAN, individually,

        Defendants.
_____/

## COMPLAINT

Plaintiff, THE GRAY INSURANCE COMPANY ("Gray"), through counsel, sues Defendants GLOBAL IMPACT PRODUCTS, LLC ("Global Impact"), NATIONAL FACADE SYSTEMS USA, LLC ("NFS"), HARM VAN DER MARK ("Mr. Van Der Mark"), CINDY SCHRAM ("Ms. Schram"), and CHRISTINE ORMAN ("Ms. Orman"), (Global Impact, NFS, Mr. Van Derk Mark, Ms. Schram, and Ms. Orman are sometimes collectively referred to in this Complaint as the "Indemnitors") and alleges:

## PARTIES, JURISDICTION, AND VENUE

1.      This Court has jurisdiction over the parties pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of diverse states.

2.      Gray is a Louisiana corporation with its headquarters in Louisiana. Its principal place of business is in Metairie, Louisiana. Thus, in accordance with 28 U.S.C. § 1332(c)(1), Gray is a citizen of Louisiana. Gray is licensed to conduct business in Florida.

3.      Global Impact is a limited liability company organized under the laws of the State of Florida, with its principal place of business in Pompano Beach, Florida. Global Impact's sole member, based on publicly available information, is:

a. Harm Van Der Mark, a person of the full age of majority, who, on information and belief, resides in North Granby, Connecticut.

Thus, Global Impact is a resident of Florida and Connecticut for purposes of 28 U.S.C. §1332(c)(1).

4.      NFS is a limited liability company organized under the laws of the State of Florida with its principal place of business in St. Petersburg, Florida. NFS' sole member, based on publicly available information, is:

a. Harm Van Der Mark, a person of the full age of majority, who, on information and belief, resides in North Granby, Connecticut.

Thus, NFS is a resident of Florida and Connecticut for purposes of 28 U.S.C. §1332(c)(1).

5.      Mr. Van Der Mark is an individual who, on information and belief, resides in North Granby, Connecticut. Thus, Mr. Van Der Mark is a resident of Connecticut for purposes of 28 U.S.C. §1332(a)(1).

6.      Ms. Orman is an individual who, on information and belief, resides in Boynton Beach, Florida. Thus, Ms. Orman is a resident of Florida for purposes of 28 U.S.C. §1332(a)(1).

7.      Ms. Schram is an individual who, on information and belief, resides in North Granby, Connecticut. Thus, Ms. Schram is a resident of Connecticut for purposes of 28 U.S.C. §1332(a)(1).

8.      The cause of action alleged herein falls within the jurisdictional limits of the Court because Gray seeks to recover more than $75,000.00 from the Indemnitors. More specifically, the Indemnitors owe Gray $298,992.96 (exclusive of interest, attorneys' fees and costs incurred in connection with enforcing the Indemnitors' obligations to Gray).

9.      Venue is appropriate in this Court because a substantial part of the events or omissions giving rise to the claim occurred in Tampa, Florida, and the construction project at issue in this matter is located in Tampa, Florida, within the province of the Tampa Division of this Court.  Global Impact, NFS and Mr. Van Der Mark stipulated to jurisdiction of the Middle District of Florida over the Mutual Release and Settlement Agreement and Consent Judgment at issue in claims asserted by Gray herein against Global Impact, NFS and Mr. Van Der Mark.

## GENERAL ALLEGATIONS

10.    As part of its business, Gray issues construction performance and payment bonds and stands as surety for selected contractors on construction projects.

11.    In connection with its work, Global Impact, from time to time, required surety bonds on construction projects.

## THE INDEMNITY AGREEMENT

12.    Before Gray would agree to issue bonds on behalf of Global Impact, it required that the Indemnitors enter into an indemnity agreement with Gray.

13.    Specifically, on October 24, 2022, the Indemnitors each executed a General Indemnity Agreement ("GIA") in favor of Gray. A true and correct copy of the GIA is attached and incorporated into this Complaint as **Exhibit "A."**

14.    The GIA applies to any and all bonds issued by Gray whether issued prior to, simultaneous with, or subsequent to the date of execution of the GIA. [GIA, ¶ 22].

15.    According to the GIA, the Indemnitors agreed, in part, to:

**2.Indemnity/Exoneration:** The Indemnitors jointly, severally and/or collectively shall exonerate, indemnify, hold harmless and keep the Surety indemnified from and against any and all Loss, liability, damages and expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, consultant or expert fees, and counsel fees) sounding in contract, tort or otherwise, which the Surety may sustain and incur: (a) by reason of having executed, delivered, or procured the execution of Bonds, or the renewal or continuation thereof, on behalf of any of the Indemnitors; (b) by reason of the failure of the Indemnitors to perform or comply with any of the covenants and conditions of this Agreement, or the failure of the Indemnitors to discharge any obligations under this Agreement; (c) in enforcing any of the terms, covenants or conditions of this Agreement; or (d) in pursuing reimbursement for any Loss incurred hereunder.

Payment by reason of the aforesaid causes shall be made to the Surety by the Indemnitors, upon demand by the Surety, as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefore. The amount of such payment to the Surety by the Indemnitors shall be determined by the Surety and the Surety's demand for payment hereunder may, at the Surety's option, be in addition to and not in lieu of or substitution for any other collateral that may have been previously deposited with Surety by or on behalf of the Indemnitors.

The Surety shall have the right to use the payment, or any part thereof, in payment or settlement of any claim, Loss, expense or liability asserted for which the Indemnitors would be obligated to indemnify the Surety under the terms of this Agreement. The Surety shall have no obligation to invert or to provide a return on the payment or any other collateral deposited with the Surety. The Indemnitors shall be entitled to the refund of any unused portion of the payment upon termination of the liability of the Surety on all Bonds and the performance by the Indemnitors of all obligations to the Surety under the terms of this Agreement. The Surety's demand shall be sufficient if sent by registered or certified mail, by facsimile transmission, or by personal service to the Indemnitors at the addresses of the Indemnitors last known to the Surety, regardless of whether such demand is actually received.

The Indemnitors acknowledge that the failure of the Indemnitors to deposit with the Surety the sum demanded by the Surety as payment, immediately upon demand, shall cause irreparable harm to the Surety for which the Surety has no adequate remedy at law. The Indemnitors agree that the Surety shall be entitled to injunctive relief for specific performance of any or all of the obligations of the Indemnitors under this Agreement, including the obligation to pay to the Surety the sum demanded, and hereby waive any claims or defenses to the contrary.

In the event of payment of any kind by the Surety, the Indemnitors further agree that in any accounting between the Surety and the Indemnitors, the Indemnitors shall be liable to the Surety for all payments, plus interest thereon at the maximum rate permitted by law, from the date such payments are made by the Surety in belief that the Surety is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient for the Surety to make such disbursements, whether or not such liability, necessity, or expediency existed. An itemized statement by an employee of such Surety, or other evidence of such payments, including records of any nature maintained by the Surety in the ordinary course of business, shall be prima facie evidence of the existence and extent of the liability of the Indemnitors to the Surety.

[GIA, § 2].

5

16.    The Indemnitors further agreed:

**12. <u>Claim Settlement</u>**. Surety shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit brought against Surety or any Indemnitor in connection with or relating to any Bond shall be paid, compromised, settled, tried, defended or appealed, regardless of whether liability exists, and its determination shall be final, binding and conclusive upon the Indemnitors. The Surety shall have no obligation to tender its defense to any Indemnitor. If the Surety elects not to/ tender its defense to any Indemnitor, the Indemnitors shall nevertheless remain liable to Surety for any and all Loss, costs, damages, interest and expenses, including but not limited to attorneys' fees and professionals' fees resulting from the Surety's investigation and/or defense. Surety shall be entitled to immediate reimbursement for any and all Loss incurred under the belief it was necessary or expedient to make such payments.

[GIA, ¶ 12].

17.    Gray and the Indemnitors agreed "Loss" is defined as:

**<u>Loss:</u>** All loss, cost and/or expenses of any kind or nature, including without limitation attorney's fees and other professionals' fees, which Surety incurs in connection with any Bond or this Agreement including, but not limited to, all loss, cost and/or expense incurred by reason of Surety's: (i) making any investigation in connection with any Bond; (ii) prosecuting or defending any action in connection with any Bond; (iii) obtaining the release of any Bond; (iv) recovering or attempting to recover collateral or security in connection with any Bond or this Agreement; (v) enforcing by litigation or otherwise, any of the provisions of this Agreement; (vi) any funds of any Contract or contract or for operating expenses of the Principal. Surety shall be entitled to interest on any such Loss at the maximum rate allowed by law.

[GIA, ¶1g].

## THE PROJECT AND THE BOND

18.    At the request of one or more of the Indemnitors, Gray issued a Supplier Performance Bond (the "Bond") naming Global Impact as principal and Verdex Construction, LLC ("Verdex") as obligee. Verdex acted as the general contractor for a project known as the Newport & Fig Student Housing, Tampa, FL (the "Project") in which Global Impact entered into a purchase order (the "Purchase Order") with

Verdex to supply glass and glazing labor, materials, equipment, fixtures, and/or appliances. A true and correct copy of the Bond is attached as **Exhibit "B"** and a true and correct copy of the Purchase Order is attached as **Exhibit "C."**

19. Disputes arose between Verdex and Global Impact on the Project.

20. On April 8, 2024, Verdex declared Global Impact in default of its contractual obligations and made demand on Gray under the Bond, initially alleging damages of $989,193.00 (the "Claim").

21. On August 29, 2024, Gray demanded the Indemnitors post collateral totaling $650,000.00 to protect Gray during the defense and investigation of the Claim. The Indemnitors failed to post collateral. A true and correct copy of the collateral demand is attached as **Exhibit "D."**

22. After an investigation of Verdex's claims, on January 24, 2025, Gray agreed to pay Verdex the sum of $350,000.00 (the "Settlement Amount") in settlement of the Claim against Gray and the Bond.

23. On February 4, 2025, Gray demanded the Indemnitors indemnify Gray for its losses in the amount of $375,775.22, which included the Settlement Amount as well as attorneys' fees and costs Gray incurred investigating the Claim. The Indemnitors refused to indemnify Gray in response to its demand.

### THE PRIOR LITIGATION, SETTLEMENT AGREEMENT AND STIPULATION OF JUDGMENT

24. As a result of the refusal of the Indemnitors to indemnify Gray, Gray filed suit in the United States District Court for the Middle District of Florida, Tampa

Division, in case number 8:25-CV-00700-SDM-SPF (the "Prior Litigation").

25.     After the filing of the Prior Litigation, Gray, and Global Impact, NFS and Mr. Van Der Mark (sometimes referred to as the "Settling Indemnitors") entered into a Mutual Release and Settlement Agreement (the "Settlement Agreement") with Gray wherein they agreed to pay to Gray the sum of $330,000.00 pursuant to a payment plan set forth in the Settlement Agreement.  A true and correct copy of the Settlement Agreement is attached as **Exhibit "E."**

26.     The Settlement Agreement provides, in part:

3.     In further consideration of Gray's execution of this Agreement, the Indemnitors agree to execute the Agreed Joint Motion for Consent Judgment, attached as Exhibit "A," granting Gray a joint and several Judgment against the Indemnitors in the amount of $336,492.96 (THREE HUNDRED AND THIRTY-SIX THOUSAND FOUR HUNDRED NINETY-TWO DOLLARS AND 96/100's (the "Consent Judgment").  Gray agrees not to file the Consent Judgment unless the Indemnitors fail to make any payment set forth in paragraph 1 within five (5) calendar days of a written Notice of Default under this Agreement (the "Cure Period").  Said Notice of Default shall be emailed to counsel for the Indemnitors, Les Osborne, at les@rorlawfirm.com. The Indemnitors agree that Gray may file the Consent Judgment with the Court without further notice If the Indemnitors do not make full payment of any amount due during the Cure Period ("Default") and immediately commence execution on the Consent Judgment. Gray shall also a file an affidavit with the Joint Motion For Consent Judgment setting forth the amounts that have been paid if any, under this Agreement. The Indemnitors shall be given credit against the amount of the Consent Judgment for any payments made to Gray under this Agreement.  Gray shall further be entitled to its reasonable attorneys' fees and costs incurred in executing on and collecting amounts due under the Consent Judgment.

* * *

6.     Upon execution of this Agreement and the Consent Judgment, the parties agree to file a Joint Motion to Dismiss the Litigation, without prejudice, and with a request that the Court retain jurisdiction over this

Agreement, including jurisdiction to enter the Consent Judgment. Should the Court not retain jurisdiction over the Agreement and the Consent Judgment, the Indemnitors agree that should the Indemnitors Default on any part of the Settlement Agreement, Gray may file a separate action to enforce this Agreement and file the Consent Judgment, and the Indemnitors appoint Les Osborne as their agent to accept service of process on their behalf in any such separate action. Should the Indemnitors default on any payment due under this Agreement, Gray may also immediately commence litigation against any indemnitor under the GIA, including any defendant in the Litigation.

27. In connection with the Settlement Agreement, the Settling Indemnitors executed a Stipulation to Entry of Judgment in Favor of The Gray Insurance Company ("Stipulation of Judgment"). A true and correct copy of the Stipulation of Judgment is attached as **Exhibit "F."**

28. The Stipulation of Judgment provides for entry of Judgment in favor of Gray and against the Settling Indemnitors in the amount of $336,492.96, plus reasonable attorneys' fees and costs incurred by Gray in enforcing and collecting amounts due under the Stipulation of Judgments, less any payments made to Gray under the Settlement Agreement.

29. Based on the Settlement Agreement and Stipulation of Judgment, Gray and the Settling Indemnitors filed a Joint Motion to Dismiss without Prejudice in the Prior Litigation and asked the Court to "[r]eserve jurisdiction to enforce the Settlement Agreement." Doc. 29 in the Prior Litigation. The Court in the Prior Litigation issued an Order dismissing the claims without prejudice without reserving jurisdiction to enforce the Settlement Agreement. Doc. 30 in the Prior Litigation.

30. The Settling Indemnitors made payments to Gray in the amount of

9

$37,500.00 under the Settlement Agreement, but have failed to make payments due on February 1, 2026, March 1, 2026, April 1, 2026, and May 1, 2026.

31. Accordingly, the Settling Indemnitors defaulted on their payment obligations under the Settlement Agreement. By letter dated May 8, 2026, Gray provided the Settling Indemnitors with notice of their default under the Settlement Agreement. A true and correct copy of the May 8, 2026 letter is attached as **Exhibit "G."**

32. Despite the notice of default, the Settling Indemnitors have not cured their defaults or otherwise responded to the May 8, 2026 notice.

33. Gray has incurred and continues to incur attorneys' fees and costs in enforcing the Indemnitors' obligations under the GIA and the Settling Indemnitors' obligations under the Settlement Agreement, for which the Indemnitors (including the Settling Indemnitors) are liable to indemnify Gray.

34. Gray has retained the undersigned attorneys to represent it in this action and is obligated to pay these attorneys a reasonable fee for their services rendered.

35. All conditions precedent to maintaining this action have occurred, been excused, or otherwise been waived.

## COUNT I
### ENTRY OF STIPULATED JUDGMENT AGAINST
### GLOBAL IMPACT, NFS AND MR. VAN DER MARK

36. Gray realleges and incorporates paragraphs 1 through 35 as if fully set forth herein.

37.    In the event of their default on payment of amounts due under the Settlement Agreement, Global Impact, NFS and Mr. Van Der Mark agreed to entry of the Stipulated Judgment in the amount of $336,492.96, plus reasonable attorneys' fees and costs incurred by Gray in enforcing and collecting amounts due under the Stipulation of Judgment, less any payments made to Gray under the Settlement Agreement.

38.    Global Impact, NFS and Mr. Van Der Mark have defaulted on their payment obligations under the Settlement Agreement and have failed to cure their defaults during the cure period despite notice of default from Gray.

39.    Gray has received payments of $37,500.00 under the Settlement Agreement, leaving a balance due under the Stipulated Judgment of $298,992.96, plus the reasonable attorneys' fees and costs incurred by Gray in enforcing and collecting amounts due under the Stipulation of Judgment.

40.    Global Impact, NFS and Mr. Van Der Mark appointed their counsel, Les Osborne, as their agent to accept service of process of this Complaint on their behalf and Gray is entitled to serve Global Impact, NFS and Mr. Van Der Mark by service on Les Osborne.

41.    Gray is entitled to Judgment against Global Impact, NFS and Mr. Van Der Mark in the amount of $298,992.96, plus attorneys' fees and costs incurred by Gray in enforcing and collecting amounts due under the Stipulation of Judgment and interest as permitted by law.

WHEREFORE, Gray demands judgment against Global Impact, NFS and Mr. Van Der Mark jointly and severally, in the amount of $298,992.96, plus attorneys' fees and costs incurred by Gray in enforcing and collecting amounts due under the Stipulation of Judgment, pre- and post-judgment interest, and such further relief as this Court deems just and proper.

## COUNT II
## CONTRACTUAL INDEMNITY

42. Gray realleges and incorporates paragraphs 1 through 35 as if fully set forth herein.

43. Cindy Schram and Christine Orman have breached and are in default of the GIA by:

    a. failing to exonerate, indemnify, hold harmless and keep the Surety [Gray] indemnified from and against any and all Loss, liability, damages, and expenses of whatsoever kind or nature….; and

    b. failing to perform or comply with the collateral provision of the GIA.

44. As a result of the breaches of and defaults under the GIA by Cindy Schram and Christine Orman, Gray suffered damages (net of recoveries) in the amount of $298,992.96 as a result of issuing the Bond, including, but not limited to, payment of the Settlement Amount to resolve the claim against the Bond, attorneys' fees, costs, and other expenses incurred in connection with the claim against the Bond.

45. Despite demand, Cindy Schram and Christine Orman failed to pay Gray its losses.

46. Cindy Schram and Christine Orman are liable jointly and severally to

Gray for all losses sustained by reason of having issued the Bond.

47.     Gray is further entitled to an award of its attorneys' fees and costs in pursuing this claim under the GIA.

WHEREFORE, Gray demands judgment against Cindy Schram and Christine Orman, jointly and severally, in the amount of $298,992.96, pre- and post-judgment interest, attorneys' fees, costs, and expenses, and such further relief as this Court deems just and proper.

Dated: June 1, 2026

PASKERT DIVERS THOMPSON

/s/ *Alberta L. Adams*
ALBERTA L. ADAMS
Fla. Bar No. 80063
Email: aadams@pdtlegal.com
100 North Tampa Street, Suite3700
Tampa, Florida 33602
Telephone: (813) 229-3500
Facsimile: (813) 229-3502
*Attorneys for The Gray Insurance Company*